**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Chicora Life Center, LC,<br><br>                        Debtor. | C/A No. 16-02447-JW<br><br>Adv. Pro. No. 16-80046-JW<br><br>Chapter 11 |
| Chicora Life Center, LC,<br><br>                        Plaintiff,<br><br>v.<br><br>Charleston County, a political subdivision of South Carolina,<br><br>                        Defendant. | |

**ORDER DENYING DEFENDANT'S MOTION FOR DISCRETIONARY ABSTENTION**

      This matter comes before the Court on the motion of the defendant Charleston County, a political subdivision of South Carolina ("County"), asking this Court to issue an order pursuant to 28 U.S.C. § 1334(c) abstaining from considering the above-captioned matter ("Motion"). Debtor and plaintiff Chicora Life Center, LC ("Debtor"), filed an objection to the Motion. Both parties briefed the issues, and a hearing was held at which counsel presented arguments. After a review of the pleadings and consideration of the arguments, the Court denies the relief requested by the County and makes the following findings of fact and conclusions of law.[1]

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

**FINDINGS OF FACT**

1.   Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 16, 2016 ("Main Case"). Debtor's primary asset is a 400,000 square foot facility located in North Charleston, South Carolina (the "Center"). Debtor's Chapter 11 Plan ("Plan") was confirmed by Order of the Court entered January 10, 2017.[2]

2.   On May 17, 2016, Debtor filed the above-captioned adversary proceeding against the County. In the Complaint,[3] Debtor seeks to enforce its leasehold rights under a commercial lease entered into with the County on June 30, 2014, as amended from time to time (collectively, the "Lease").[4] The Complaint asserts claims against the County for breach of contract and damages arising from the County's March 2016 notice of termination, as well as a declaratory judgment that the County's March 2016 termination was improper and ineffective. The Complaint also seeks specific performance, damages, and other relief against the County.[5]

3.   The County answered the Complaint,[6] denying that Debtor was entitled to the requested relief and asserting various defenses and several counterclaims against Debtor.[7]

---

[2] Although it takes into account the possibility that Debtor will not prevail in this litigation, the Plan provides that Debtor's primary reorganization goal is to enforce the Lease (as hereinafter defined), which will stabilize the Center's occupancy and generate revenues with which Debtor can repay its creditors.

[3] The original complaint was amended on August 31, 2016, and again by consent on January 3, 2017. The original complaint, together with any amendments, will hereinafter be collectively referred to as the "Complaint."

[4] The Lease contemplates that the County will be the Center's anchor tenant.

[5] The Third through Fifth causes of action assert claims against the County for intentional interference with existing contracts, intentional interference with prospective contracts, and a claim for violation of the South Carolina Unfair Trade Practices Act.

[6] The County filed its answer and counterclaims: (a) to the original complaint on June 24, 2016; (b) to the amended complaint on September 7, 2016; and (c) to the second amended complaint on January 17, 2017. The answers and counterclaims will be collectively referred to herein as the "Answer."

[7] The Answer asserts counterclaims against Debtor for breach of contract, a declaratory judgment that the Lease is terminated, and a claim for conversion arising out of Debtor's retention of furniture and equipment purchased by the County and in Debtor's possession ("Personalty"). The County seeks monetary damages against Debtor and a return of the Personalty. It also appears that an agency of the County may have filed a proof of claim in

The Answer also contains a demand for a jury trial on all claims between the parties, and a statement that the County does not consent to the entry of final orders or judgments by this Court.

4.  It is apparent from the Disclosure Statement, the confirmed Plan, and other matters of record, that the outcome of this adversary proceeding has a direct impact on the value of the Center and on Debtor's reorganization plan.

5.  The parties have been engaged in discovery since August 2016. Counsel for the parties advised the Court that regardless of the forum in which the case is ultimately tried, the parties intended to be diligent in their prosecution of this matter. Pursuant to the Consent Amended Scheduling Order entered on January 5, 2017, discovery concludes on March 31, 2017, and the parties' proposed pre-trial order is due May 19, 2017.

5.  On January 20, 2017, Debtor moved for summary judgment. A hearing on this motion is scheduled for March 1, 2017. As of the date of this Order, the time for the County to respond has not expired.

## CONCLUSIONS OF LAW

The County asks the Court to abstain from hearing this matter pursuant to 28 U.S.C. § 1334(c)(1), which provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for State Law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

---

the Main Case for the cost of the Personalty that is the subject of the counterclaims. *See In re Chicora Life Center, LC,* Case No. 16-2447, Claims Register at Claim 8.

The Supreme Court has directed federal courts to narrowly construe requests for discretionary abstention, and to abstain in favor of a state court's adjudication of a matter only in "exceptional circumstances," when to abstain "would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

When considering a request for discretionary abstention, this Court has specifically adopted the factors proposed in *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987):

1. The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;
2. The extent to which state law issues predominate over bankruptcy issues;
3. The difficulty or unsettled nature of the applicable state law;
4. The presence of a related proceeding commenced in state court or other nonbankruptcy court;
5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334;
6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. The substance rather than form of an asserted "core" proceeding;
8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9. The burden of the bankruptcy court's docket;
10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. The existence of a right to a jury trial; and
12. The presence in the proceeding of nondebtor parties.

*Id.*; *accord Dunes Hotel Assocs. v. Hyatt Corp.* (*In re Dunes Hotel Assocs.*), 1996 WL 33340785, at *6-8 (Bankr. D.S.C. July 11, 1996) (applying the *Republic Reader's* factors

4

when deciding whether to abstain). As the moving party, the County bears the burden of proving that discretionary abstention is warranted under the facts of this case. *See Hough v. Margulies* (*In re Margulies*), 476 B.R. 393, 402 (Bankr. S.D.N.Y. 2012) ("The movant bears the burden of establishing that permissive abstention is warranted.").

After a review of the record in the adversary proceeding and in the Main Case, the Court finds that many of the *Republic Reader's* factors are significant to the Court's determination that it should not abstain in this matter. First, at issue in this adversary proceeding is whether the County or Debtor breached the Lease, and a determination of the prevailing party's remedies and damages. The Lease was not only one of the most valuable assets of the bankruptcy estate, but enforcement of the Lease is the cornerstone of the confirmed Plan and Debtor's reorganization. Thus, the success of the confirmed Plan is integrally tied to the outcome of this adversary proceeding. Conversely, if Debtor does not prevail, the County will hold a significant judgment against Debtor that must be paid pursuant to the confirmed Plan.

While it is true that a determination of the parties' rights and obligations under the Lease is based in state law, this Court is routinely asked to determine parties' rights under state law. *See, e.g.*, *In re Infinity Business Group, Inc.*, C/A No. 10-06335-jw, slip op. (Bankr. D.S.C. June 22, 2011) (determining whether claims brought in state court litigation were property of the debtor's estate); *Newman v. Ducane*, (*In re Ducane Gas Grills, Inc.*), 320 B.R. 324 (Bankr. D.S.C. 2004) (adjudication of claims for conversion, specific performance, and breach of contract). The legal issues in this case are familiar to the Court, (contract interpretation, commercial landlord tenant law, and the calculation of damages), and none of the issues present either difficult or unsettled issues of state law.

5

In addition, this Court has before it all of the necessary parties to expeditiously determine the issues raised in the Complaint and Answer. It is undisputed that there are no related proceedings pending in any other court. The parties have been engaged in discovery since at least August 2016 and the matter appears to be moving quickly towards a conclusion — much more rapidly than it would if the Court abstained and the action was refiled in state court. To commence litigation of this matter in state court would result in substantial delay and disruption for all parties. *See Republic Reader's,* 81 B.R. at 426. The fact that Debtor has moved for summary judgment prior to the close of discovery indicates to the Court that there may be considerable evidence ready and available to adjudicate this matter, whether in a summary fashion or after a trial in the near term.

Another important factor in the Court's decision is the fact that the parties' claims against each other have a close nexus to the confirmed Plan, which expressly contemplates the continuation of this litigation. No matter who prevails, the outcome of this adversary will directly impact the Plan's implementation. *See In re AstroPower Liquidating Tr.*, 335 B.R. 309, 323-24 (Bankr. D. Del. 2005) (when a confirmed plan specifically describes an action over which the Court had pre-confirmation, related to jurisdiction, and contemplates the prosecution of the claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy case to support the court's post-confirmation jurisdiction). To sever the claims for adjudication in state court would unduly delay the consummation of Debtor's plan.

While the Answer purports to challenge this Court's authority to enter a final order, the County may not have preserved this challenge by filing a motion objecting to this Court's entry of final orders or judgments by the deadline imposed in the subsequent July 27, 2016

6

Scheduling Order. *See Wellness Int'l Network Ltd. v. Shariff*, 135 S. Ct. 1932, 1947-48 (2015) (Litigants may consent to the Bankruptcy Court adjudicating *Stern* claims. Consent may be express, or consent can be implied if the circumstances indicate that the consent was knowing and voluntary. The key inquiry is whether "litigant or counsel was made aware of the need for consent and the right to refuse . . . ."). Even if there remains an issue of final authority, this Court could continue to administer this case through trial and thereafter issue proposed findings of fact and conclusions of law. *See Executive Benefits Ins. Agency v. Arkinson*, 134 S. Ct. 2165, 2170 (2014) (when presented with a *Stern* claim, the bankruptcy court issues proposed findings of fact and conclusions of law, which the District Court then reviews *de novo*.); *Moses v. CashCall, Inc.,* 781 F.3d 63, 70 (4th Cir. 2015) ("[W]hen a bankruptcy court is faced with a claim that is *statutorily* core but *constitutionally* non-core—a so-called '*Stern* claim'—it must treat the claim as if it were statutorily non-core, submitting proposed findings of fact and conclusions of law to the district court for *de novo* review.") (emphasis original); *Vieira v. Vice* (*In re Legacy Dev. SC Group, LLC*), 2016 WL 7324678, at *4 (D.S.C. Dec. 16, 2016) (denying defendants' motion to withdraw the reference because, even though it lacked constitutional authority to issue a final judgment, the bankruptcy court could still submit proposed findings of fact and conclusions of law to the district court).

Furthermore, when it asserted counterclaims in this proceeding seeking damages against Debtor, the County triggered the claims allowance process and appears to have waived its right to a jury trial. *See In re Southern Textile Knitters*, 236 B.R. 207, 212 (Bankr. D.S.C. 1999) (by filing counterclaims against the plaintiff/trustee, defendants waived their right to a jury trial); *see also Langencamp v. Culp*, 498 U.S. 42, 44-45 (1990) (The filing of a claim in a bankruptcy case triggers the claims allowance process and subjects the claimant to the

bankruptcy court's equitable powers. Once the claims allowance process is triggered, the claimant can no longer demand a right to a trial by jury for any claim, including a claim brought against the claimant by the estate.); *Murray v. Richmond Steel & Welding Co.* (*In re Hudson*), 170 B.R. 868, 875 (E.D.N.C. 1994) (defendant who filed a counterclaim seeking payment of pre-petition damages from the bankruptcy estate waived its right to a jury trial not merely by filing a counterclaim, but by filing a counterclaim that sought damages from the estate); *Harpole Constr., Inc. v. Medallion Midstream, LLC* (*In re Harpole Constr., Inc.*), 2017 WL 113595, at * 4 (Bankr. D.N.M. Jan. 10, 2017) (a party who files a counterclaim seeking monetary damages from the bankruptcy estate may waive its right to a jury trial even if it has not filed a proof of claim); *Bayless v. Crabtree Through Adams*, 930 F.2d 32, 1991 WL 50166, at *2 (10th Cir. April 2, 1991) (Even in the absence of a proof of claim, a party who files a counterclaim seeking monetary relief from the estate in an adversary proceeding has invoked the claims allowance process and thereby consented to the jurisdiction of the bankruptcy court and waived its right to a jury trial.); *see generally Stern v. Marshall*, 564 U.S. 462, 499 (2011) (recognizing the difference between actions that seek to "augment" a bankruptcy estate and those that "seek 'a pro rata share of the bankruptcy res,' . . . **"**[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.") (internal citation omitted).

Finally, the Court's docket is not overly burdened by this action. The scope of the issues before this Court is limited and focused — determining whether or not the County's termination of the Lease was proper and thereafter the parties' respective remedies. All of the necessary parties to adjudicate this matter are before this Court, and this Court can address the proceeding in an efficient and timely manner.

## CONCLUSION

For the stated herein, and based on the *Republic Reader's* factors, the Court declines to abstain in this proceeding at this time.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**02/09/2017**



*John E Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 02/09/2017