## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **16-02447-jw**
Adversary Proceeding Number:  **16-80046-jw**

## ORDER ON CHARLESTON COUNTY'S MOTION FOR SUMMARY JUDGMENT AND CHICORA LIFE CENTER'S REQUEST FOR SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 22 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/26/2017**



John E Waites

US Bankruptcy Judge
District of South Carolina

Entered: 07/26/2017

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Chicora Life Center, LC,<br><br>                     Debtor. | Case No. 16-02447-JW<br><br>Adv. Pro. No. 16-80046-JW<br><br>Chapter 11 |
| Chicora Life Center, LC,<br><br>                  Plaintiff,<br>v.<br><br>Charleston County, a political subdivision of South Carolina,<br><br>                  Defendant. | |

## ORDER ON CHARLESTON COUNTY'S MOTION FOR SUMMARY JUDGMENT AND CHICORA LIFE CENTER'S REQUEST FOR SUMMARY JUDGMENT

This matter comes before the Court on the motion of defendant Charleston County (the "County") for Summary Judgment, and on plaintiff Chicora Life Center, LC's ("Chicora"), memorandum in opposition to the County's motion, and in support of its own request for judgment.

After reviewing the parties' respective briefs, the record in this adversary proceeding, and considering the arguments of counsel, the Court grants in part and denies in part the County's motion, denies Chicora's request for summary judgment, and rules as follows:

1

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

### I. Procedural Posture

On May 17, 2016, Chicora commenced the above-captioned adversary proceeding, asserting in its complaint[2] six (6) causes of action against the County, all related to Chicora's efforts to enforce its rights under a lease entered into by the parties on June 30, 2014, as amended from time to time (collectively the "Lease").  The Complaint asserts claims against the County for breach of contract and damages arising therefrom.  In addition, the Complaint seeks declaratory judgment that the County's attempt to terminate the Lease on March 9, 2016 ("Attempted Termination") was improper and ineffective, seeks specific performance, and asserts claims against the County for intentional interference with existing and prospective contracts, and also a claim for violation of the South Carolina Unfair Trade Practices Act.

The County answered the Complaint on June 24, 2016,[3] denying that Chicora was entitled to the requested relief and asserting counterclaims against Chicora for prepetition breach of contract and for a declaratory judgment that the Lease was "terminated, cancelled, rescinded, and/or invalid" prepetition.[4]

On or about January 19, 2017, Chicora moved for partial summary judgment on its declaratory judgment and specific performance causes of action ("Chicora's First Motion").  The County responded to Chicora's First Motion on February 21, 2017, by filing a "Memorandum in

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

[2] The original complaint was amended on August 31, 2016, and again by consent on January 3, 2017.  The original complaint, together with any amendments, will hereinafter be collectively referred to as the "Complaint."

[3] The County filed its answer and counterclaims: (a) to the original complaint on June 24, 2016; (b) to the amended complaint on September 7, 2016; and (c) to the second amended complaint on January 17, 2017.  The answers and counterclaims will be collectively referred to herein as the "Answer."

[4] The Answer also asserted a counterclaim for conversion, which the County has since withdrawn.

Opposition to Plaintiff's Motion for Summary Judgment and in Support of Summary Judgment for the Defendant" (collectively "County's First Motion"). In its First Motion, the County asked the Court to deny Chicora's First Motion, and to grant the County affirmative relief pursuant to Federal Rule of Civil Procedure 56(f)(1). A hearing on these matters was held on March 1, 2017.

On April 20, 2017, the County filed a Motion for Summary Judgment ("County's Second Motion"), wherein it asked the Court to grant it summary judgment on all claims asserted in this litigation between the parties. On May 24, 2017, Chicora filed its Memorandum in Opposition to the County's Second Motion and in Support of Summary Judgment for Chicora ("Chicora's Second Motion").

On May 1, 2017, the Court made an oral ruling on the parties' First Motions, and memorialized the oral ruling by entering an Order Granting in Part and Denying in Part Chicora's Motion for Summary Judgment and Denying the County's Request for Summary Judgment (hereinafter "First Summary Judgment Order").[5]

In the First Summary Judgment Order, among other things, the Court found that the Attempted Termination was ineffective due to the County's prepetition waiver of prior defaults and breaches, and/or its failure to comply with the notice requirements arising under the Lease or imposed by South Carolina law.

On June 5, 2017, the Court heard oral arguments on the parties' Second Motions.

---

[5] In the First Summary Judgment Order, the Court set forth in detail the history of the parties' relationship and the facts and procedural history of this case. The Court will not repeat this background information in full herein, but will merely set forth any additional facts relevant to this Order. Terms defined in the First Summary Judgment Order shall have the same meaning in this Order.

3

## II.  Jurisdiction

The Court has previously ruled that it has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and that it has both statutory and constitutional authority to enter final orders in this proceeding.  *See* First Summary Judgment Order at 22-30.

## III.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 ("Rule 56"), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, states that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and . . . [the rule] should be interpreted in a way that allows it to accomplish this purpose."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

The movant "always bears the initial responsibility of informing the [Court] of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [movant] believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. at 323.  Thereafter, the opponent must come forward with "any of the kinds of evidentiary materials listed in Rule 56(c)," and designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  As explained by the Supreme Court:

> Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted. . . . [W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, all evidence must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. If, however, the opponent fails to make a sufficient showing to establish the existence of an element essential to its case, and on which the opponent bears the burden of proof at trial, summary judgment will be granted to the movant. *Celotex Corp. v. Catrett*, 477 U.S. at 323; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

## IV.    Matters Previously Determined

### A.    Declaratory Judgment

The County asks the Court to declare that the Lease was terminated prepetition, and to find that the County has no further obligations under the Lease because of Chicora's alleged prepetition breaches. As part of its request for declaratory judgment, Chicora sought a declaration that the Lease remains in full force and effect, and is a valid and binding obligation on the County.

In the First Summary Judgment Order, the Court found that the Attempted Termination was ineffective due to the County's prepetition waiver of prior defaults and breaches, and/or its failure to comply with the notice requirements arising under the Lease or imposed by South Carolina law. Furthermore, without an effective prepetition termination of the Lease, and according to the terms of its Confirmed Plan, Chicora, as the Debtor-in-Possession, assumed the Lease pursuant to 11 U.S.C. § 365. The First Summary Judgment Order therefore determined the County's request for declaratory judgment, as well as the above-referenced portion of Chicora's request for declaratory judgment.

B.  <u>Specific Performance</u>

Chicora has also asked the Court to grant it summary judgment on its request for specific performance of the Lease.  Due to the Court's determination that the Lease was assumed by Chicora under the Confirmed Plan, the Court previously indicated that the specific performance cause of action was unnecessary at the time.  However, in light of the County's refusal to accept or allow Chicora's post-assumption performance, the remedy of specific performance now may be applicable.  Inasmuch as questions of material fact may exist, on this cause of action, the request for summary judgment is denied, but it may be considered at trial.

C.  <u>Breach of Contract – The County</u>

In its Counterclaim for breach of contract, the County alleges that Chicora breached the Lease prepetition in numerous respects. However, as indicated in the First Summary Judgment Order, the County waived the right to assert any defaults or breaches that arose before the Attempted Termination. This waiver includes those defaults and breaches identified in its Counterclaims. Therefore, the County's request for summary judgment on its breach of contract claim is denied.

**V.  Matters with remaining questions of material fact**

A.  <u>Breach of Contract - Chicora</u>

In the Complaint, Chicora alleges that the County breached the Lease by: (1) refusing to deliver an executed estoppel certificate despite Chicora's repeated requests; (2) refusing to negotiate in good faith regarding the Budget Cap overages; (3) refusing to advance the licensing of the Leased Premises in a reasonably timely manner; (4) refusing to pay Budget Cap overages; (5) refusing to pay monthly rent after notice and demand; (6) "taking an adversarial position in regards to the Lease and [Chicora, and] entirely abandoning the common purposes and objectives

6

of the Lease;" and (7) "hindering [Chicora] in its efforts to carry out the objectives and purposes of the Lease." Chicora also argues in its Second Motion that the Attempted Termination was a breach of the Lease.

The Court has previously found that the County's prepetition attempt to terminate the Lease was ineffective due to the County's waiver of prior defaults and breaches and/or its failure to comply with the notice requirements arising under the Lease or imposed by South Carolina Law.[6] The Court must now determine whether the Attempted Termination was a breach of the Lease, entitling Chicora to an award of damages.

"The elements for a breach of contract [claim] are the existence of the contract, its breach, and the damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012). "The general rule is that for a breach of contract the [breaching party] is liable for whatever damages follow as a natural consequence and a proximate result of such breach." *Id.* at 209 (quoting *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962)); *accord Branch Banking v. Market Logistics, Inc.*, 2016 WL 3097396, at *4 (D.S.C. 2016).

The County argues that the Attempted Termination was justified because of Chicora's existing breaches; however, the Court has previously determined that the County waived all defaults and breaches prior to the Attempted Termination, and that the termination was improper. The record before the Court indicates that since May 2015 the parties disagreed about Chicora's performance and whether Chicora had met the preconditions to trigger the Effective Date. The County repeatedly asserted defaults and threatened termination, and Chicora repeatedly asserted that it had sufficiently performed and demanded that the County begin paying rent.

---

[6] Details of Chicora's alleged defaults and the County's responses thereto are described in the First Summary Judgment Order.

Despite the parties' bickering over various clauses in the Lease, in the weeks leading up to the Termination Letter, Chicora, with the County's encouragement, was endeavoring to complete the Tenant Improvements and to satisfy the other preconditions to the Effective Date. For example, on January 22, 2016, the County provided Chicora with a copy of the County's January 20, 2016 inspection report,[7] which identified items in the Leased Premises that the County felt needed Chicora's further attention. On February 3, 2016, Chicora presented the County with final Certificates of Occupancy for the Leased Premises. Chicora had a pre-inspection of the Leased Premises scheduled for March 24, 2016, and on March 3, 2016 (less than a week before the Attempted Termination), Chicora received a Notice of Plan Approval of Chicora's construction documents from DHEC, which approval it shared with the County.

Interrupting these efforts was the Termination Letter, which purported to immediately terminate the Lease and deprived Chicora of the opportunity to continue its efforts to complete its performance under the Lease. *See, e.g., Carter v. Krueger,* 916 S.W.2d 932 (Tenn. Ct. App. 1995) (holding that wrongful termination overrode counterparty's prior uncured material breach because it prevented counterparty from taking steps to cure its breach). Not surprisingly, Chicora's efforts necessarily ground to a halt upon its receipt of the Termination Letter. Not only is it evident from the record that the Attempted Termination disrupted the parties' performance under the Lease, the Attempted Termination was also a contributing factor to Chicora's bankruptcy.

Because a wrongful termination of a contract is "itself the paramount material breach," the terminating party must ensure, prior to attempting to terminate a contract, that its decision is

---

[7] The January 20, 2016 report was updated from the County's original inspection report dated May 6, 2015.

justified and properly consummated. *See Walker & Co. v. Harrison*, 81 N.W.2d 352, 355 (Mich. 1957) (the decision to terminate a contract "is fraught with peril for should such determination, as viewed by a later court in the calm of its contemplation, be unwarranted, the repudiator himself will have been guilty of material breach and himself have become the aggressor, not an innocent victim").

Applying the aforementioned standards to the facts before the Court, and reviewing the record in a light most favorable to the County, and having previously held that the Attempted Termination was neither effective nor proper, the Court finds that the Attempted Termination was a material breach of the Lease. However, because there are questions of material fact on the issue of damages arising from the Attempted Termination, the Court must deny summary judgment at this time. *See Hotel and Motel Holdings, LLC v BJC Enters., LLC*, 780 S.E.2d 263, 272–73 (S.C. Ct. App. 2015). In addition, because there are questions of material fact regarding whether any other alleged action by the County might also constitute a breach of the Lease, the Court denies Chicora's motion for summary judgment on those claims as well.

B. Chicora's request for Declaratory Judgment

As part of its request for declaratory judgment, Chicora also asked the Court to declare that the Effective Date was considered met and satisfied, and that payment of monthly rent is a current and continuing obligation of the County. Because questions of fact prevent the Court from concluding these issues, the Court denies Chicora's request for summary judgment on these issues.

VI.    **Matters for which summary judgment may be entered**

A. Intentional Interference with Existing Contracts

The parties have asserted cross motions for summary judgment on Chicora's claim against the County for intentional interference with existing contracts. Specifically, Chicora alleges that

9

Fetter Health Care Network ("Fetter") and the South Carolina Department of Mental Health ("Mental Health") breached their leases as a result of the County's alleged interference.

To establish a cause of action for tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract with a third party; 2) the defendant's knowledge of the contract; 3) defendant's intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages. *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 642 S.E.2d 726, 731 (S.C. 2007). Chicora, as the party asserting the claim for intentional interference with contractual relations, has the ultimate burden of proof on each of the required elements. *See Listak v. Centennial Life Ins. Co.*, 977 F. Supp. 739, 743 (D.S.C. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 323).

Two essential elements of a claim for intentional interference with contractual relations are the requirement that the third-party have breached its contract, and that its breach was intentionally procured by the defendant. *See First Union Mortg. Corp. v. Thomas*, 451 S.E.2d 907, 913 (S.C. Ct. App. 1994) (if the third party has not breached its contract, there can be no recovery); *Kinard v. Crosby*, 433 S.E.2d 835, 837 (S.C. 1993); *Eldeco*, 642 S.E.2d at 732 ("Although it is true that harm may result from an intentional interference with existing or prospective contractual relations, it is not necessary that the interfering party intend such harm. Instead, it is only necessary that they intend to interfere with either an existing contract or intend to interfere with a prospective contract."). The latter element requires the plaintiff to show that, but for defendant's interference, plaintiff's contractual relationship with the third-party would have continued. *See* 30 S.C. Jur. Torts § 18, n.81 (citing *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 607 (S.C. Ct. App. 1984)); 44B Am. Jur. 2d Interference § 17 ("A necessary element of the tort of interference is a showing that the defendant played an active and substantial part in causing the loss to plaintiff; there must be some voluntary conduct, some overt and improper act, on the part

10

of the defendant. . . . Conduct is generally not improper if it was merely a consequence of actions taken for a purpose other than to interfere with a contract.").

In the present matter, the County argues that there is no issue of material fact and that Chicora has failed to meet its burden of proof because the record fails to show that the County procured the breaches of Fetter and Mental Health's leases. The Court agrees.

Chicora points to the testimony of Walter Smalls, the County's Deputy County Administrator for General Services ("Mr. Smalls"), the testimony of Ruth Jordan, the former interim CFO of Fetter, and the minutes from several meetings of the Mental Health Task Force, to support its claim for intentional interference of contractual relations. However, this evidence does not demonstrate an overt and improper act of the County to interfere with Chicora's third-party contracts.  The testimony of Mr. Smalls only indicates that the County was aware that Chicora viewed the County as the Property's anchor tenant, and that Chicora might suffer financial consequences if the County did not occupy the Leased Premises.[8] Chicora also relies upon the

---

[8] Excerpts from Mr. Smalls Deposition:

    Q.      We talked a minute ago about an anchor tenant?

    A.      Yes.

    Q.      You understand what an anchor tenant is?

          . . .

    A.      Yes.

    Q.      You understand the significance of an anchor tenant to the landlord?

    A.      Yes.

    Q.      And you understood that the county was the anchor tenant for the Chicora Life Center?

    A.      Yes.

          . . .

    Q.      Chicora Life Center purchased this building, correct?

    A.      Correct.

    Q.      And it purchased it in reliance upon the county occupying the space as an anchor tenant, correct?

minutes of a meeting of the Mental Health Task Force, which indicate that Mental Health determined to lease a different space shortly after the County's decision not to occupy the Property. Further, the testimony of Ruth Jordan merely indicates that Fetter's decision to lease from Chicora was motivated by the County's presence in the Leased Premises, and that the County and Fetter communicated about the progress of the Property's renovations.[9] However, the Court notes that

---

A.      Yes.

Q.      And, therefore, you understood that the county becoming the anchor tenant was important to Chicora Life Center?

A.      Correct.

Q.      Important to its financial success; and it could be important to its financial failure if the county did not occupy the premises; you understood that?

A.      Yeah.    You would have impacts that -- yes.

. . .

Q.      Well, the point is, if the county did not occupy this space, it could lead to the ruination of the Chicora Life Center?

A.      Okay.

Q.      You would agree with that?

A.      I don't know if it would ruin Chicora.  It would have impacts on you, I agree.

Q.      The county could anticipate that, correct?

A.      Can anticipate?

Q.      Could anticipate that this would have a financial impact upon Chicora Life Center?

A.      Correct.

. . .

Q.      And the county could foresee that if it did not move in as an anchor tenant, it could have grave financial consequences to Chicora Life Center, correct?

A.      I'm not going to agree to the degree, but it would have an impact on it. I don't know the degree that it would hurt your client, because I can't quantify that. All I can say is, yes, it would impact you.

[9] Excerpt from Rule 30(b)(6) Deposition of Ruth Jordan dated January 3, 2017 (hereinafter "Jordan Deposition"), taken in Chicora's state court lawsuit against Fetter (*Chicora Life Center, LC v. Fetter Health Care Network, Inc., et al.*, Case No. 2016-CP-10-2380):

Q.      So would I be right to understand that a primary motivating factor and moving the clinic was to make it more geographically accessible to the people who used it?

A.      Yes, along with all the other county services that were going to be in the building as well.

Ruth Jordan further testified that the only reason Fetter did not occupy the building was because the building was not completed.[10]

The record does not indicate that the County took any active or deliberate action for the purpose of inducing Fetter or Mental Health to breach their leases.  There is no evidence that any member of Charleston County Council or any other actor from the County contacted either Fetter or Mental Health to urge or encourage a breach.  There is no evidence of any County action aimed at directly influencing any action on the part of Fetter or Mental Health.  Instead, the record indicates that County's actions were focused on its own perceived issues with its Lease.  Finally, there is no evidence that, but for the County's actions, Fetter and Mental Health would not have terminated their leases.  To the contrary, the testimony of representatives from Fetter and Mental

---

[10] Excerpts from the Jordan Deposition that the County presented include:

> Q.      Yeah, but my question is, as of today.  You're the 30(b) (6) representative of Fetter. And my question is, as we sit here today, is the only reason that Fetter has not occupied the North Charleston building and started paying rent is because its position is the punch list hasn't been completed?

> A.      As of April of 2016, the only reason we did not occupy the building during my tenure was because the building was not completed with all the repairs and upfitting in accordance with the contract, as of April 2016, is the reason why we are not in the building.

According to Ms. Jordan, while she did speak with someone from the County about the status of the County's Lease, she does not testify that anyone from the County attempted to persuade or pressure Fetter not to take occupancy or to breach its lease.

The County also offered the Affidavit of Aretha Jones, Fetter's current CEO.  Ms. Jones confirmed Ms. Jordan's testimony that Fetter's position was that Chicora breached the parties' lease because it failed to honor its obligations under the lease, including completion of tenant improvements and execution of a non-disturbance agreement.  Ms. Jones affidavit does not state that Fetter refused to occupy its premises because of the Attempted Termination.

With respect to Chicora's lease with Mental Health, the County offered the Affidavit of Deborah Blalock, the Executive Director of the Charleston Dorchester Mental Health Center ("CDMH"), which is operated by the South Carolina Department of Mental Health ("Department").  Ms. Blalock was identified by Chicora in discovery as a witness to testify that the County persuaded Mental Health to breach the parties' lease.  Ms. Blalock's affidavit, however, states that Mental Health terminated its lease with Chicora solely because of Chicora's repeated defaults, and not because of anything the County said or did.  Ms. Blalock's affidavit further states that at no point did the County or any other entity encourage Mental Health to terminate or breach its lease with Chicora.

Health is that each organization terminated its lease with Chicora due to Chicora's alleged failure to complete the tenant improvements to their leased spaces.[11]

For these reasons and construing the evidence in a light most favorable to Chicora, the Court grants the County's Motion for Summary Judgement as to Chicora's cause of action for intentional inference with contractual relations.

B.  Intentional Interference with Prospective Contracts

The parties have also asserted cross motions for summary judgment on Chicora's claim that the County intentionally interfered with Chicora's prospective contracts when the County attempted to terminate the Lease.

To establish a claim for intentional interference with prospective contractual relations, a plaintiff must show: 1) defendant's intentional interference with a prospective contract; 2) for an improper purpose or by improper methods; and 3) resulting in injury.  *Eldeco,* 642 S.E.2d at 731. "A 'prospective contractual relation' is something less than a contractual right, [but] something more than a mere hope.  In short, it is a reasonable probability that contractual relations will be realized.  The agreement must be a close certainty.  The mere hope of a contract is insufficient." Ralph K. Anderson, Jr., S.C. Requests to Charge - Civil, § 33-2 Tortious Interference with Contract; *see United Educ. Distrib., LLC v. Educ. Testing Serv.*, 564 S.E.2d 324, 30 (S.C. Ct. App. 2002) (noting that "conclusory speculation certainly cannot form the basis of an action [for intentional interference with prospective contracts], because there is no evidence of a reasonable probability that a contract will be realized . . . nor any of economic loss to plaintiff caused by

---

[11] While it may be foreseeable that a tenant would desire to lease property in part due to the presence of a specific anchor tenant, and foreseeable that the anchor tenant's decision not to occupy a property would influence the tenant's decision to occupy, it does not necessarily follow that the anchor tenant's decision not to occupy equates to an overt act to procure a breach by other tenants.

defendants") (internal citation omitted).  The plaintiff must "demonstrate that he had a truly prospective or potential contract with a third party; that the agreement was a close certainty; and that the contract was not speculative." *First South Bank v. South Causeway, LLC*, 778 S.E.2d 493, 499 (S.C. Ct. App. 2015); *accord United Educ. Distrib.*, 564 S.E.2d at 328-30.

Similar to its cause of action for intentional interference with contractual relations, Chicora asserts that the County knew that its decision to not occupy the Leased Premises would result in the loss of prospective tenants and chill interest in the Property. However, while it may be foreseeable that prospective tenants would be less likely to lease from a landlord without an anchor tenant present in the property, this alone is not sufficient to indicate that the County acted to intentionally interfere with Chicora's prospective contracts.

While Chicora relies upon lease proposals it sent to two prospective tenants, [12] as well as related email communications, [13] there is no evidence that the County had any contact with or knowledge of these prospective tenants or that it interfered with Chicora's efforts to contract with them.[14]

Therefore, after reviewing the record, and construing all evidence presented in a light most favorable to Chicora, the Court concludes that there is no genuine issue of material fact, and the

---

[12] My Sister's House and Trident Literacy are the two organizations to whom Chicora presented proposals.

[13] Based upon the record, there is also a question whether such prospective proposals were a "close certainty" as required under South Carolina law to recover damages for an intentional interference with prospective contracts. However, it is not necessary for the Court to make this determination at this time.

[14] In addition, Chicora alleges that the County tried to "blacklist" Chicora. However, the only evidence regarding "blacklisting" in the record is from the affidavit of Cynthia Young of the South Carolina Department of Administration submitted by the County, which states that "[n]either Charleston County, nor anyone on its behalf, has ever asked me to 'blacklist' Chicora as an entity with which government bodies should be wary of leasing space. I am not aware of any efforts taken by Charleston County . . . to have Chicora 'blacklisted' . . . ."

County is entitled to summary judgment on Chicora's intentional interference with prospective contract cause of action.

### C. South Carolina Unfair Trade Practices Act

In its Fifth Cause of Action, Chicora alleges that the County's conduct (as described in the Complaint and including the Attempted Termination, collectively the "Conduct") is an unfair trade practice giving rise to damages in its favor under the South Carolina Unfair Trade Practices Act (the "Act").

South Carolina Code § 39-5-20(a) declares unlawful, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." "To recover in an action under the [Act], the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Health Promotion Specialists, LLC v. South Carolina Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (citing *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006)). The Court reviews each of the elements in turn.

#### 1. Unfair or Deceptive Acts

One important component of an unfair trade practices claim is the requirement that the act complained of be unfair or deceptive. "An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." *Gentry v. Yonce*, 522 S.E.2d 137, 143 (S.C. 1999), *overruled on other grounds by Proctor v. Whitlark & Whitlark, Inc.,* 778 S.E.2d 888 (S.C. 2015). "An act is 'deceptive' when it has a tendency to deceive." *Id.*; *see also Young v. Century Lincoln-Mercury, Inc.*, 396 S.E.2d 105, 108 (S.C. Ct. App. 1989), *judgment affirmed in part, rev'd in part on other grounds by* 422 S.E.2d 103 (S.C. 1991) ("Whether a particular act or practice is unfair or

16

deceptive within the meaning of the [Act] depends upon the facts surrounding the transaction and its impact on the market place.").

Having determined that the Attempted Termination was improper based upon the circumstances of the case, the Court finds that there is a question of material fact which prevents the Court from concluding whether or not the County's Conduct was unfair or deceptive, precluding summary judgment on this factor.

### 2. Impact on the public interest

The second element of a claim under the Act is the requirement that the acts complained of have a direct impact not only on the parties to the transaction, but on the public at large. *See Gillins v. Celadon Trucking Services, Inc.*, 2016 WL 4455018, at *4 (D.S.C. 2016) (impact on the public interest may be shown by producing evidence that the complained of the act or practice has the potential for repetition).[15]

On this issue, the County argues that Chicora's claim must fail because Chicora neither alleged or produced evidence to support its allegation that the public interest is affected or impacted by the transaction or the Conduct. Chicora responds by pointing to the County's repeated statements that it is acting "on behalf of the citizens of Charleston County." Chicora argues that because the County is a body politic, represents the public, entered into the transaction for the

---

[15] A party may satisfy the Act's "public interest" requirement through the submission of evidence that the alleged unfair or deceptive acts or practices have the potential for repetition. *See, e.g., York v. Conway Ford, Inc.*, 480 S.E.2d 726, 728 (S.C. 1997). A plaintiff may show a potential for repetition either, "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the [defendant's] procedures create a potential for repetition of the unfair and deceptive acts." *Daisy Outdoor Advert. Co., Inc. v. Abbott*, 473 S.E.2d 47, 49–50 (S.C. 1996). On this point, it is important to note that "the plaintiff in a SCUTPA action is required only to allege and prove those facts sufficient to demonstrate potential for repetition; at that point, plaintiff has proven an adverse effect on the public interest sufficient to recover under the SCUTPA." *Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.*, 176 F. Supp. 2d 510, 516 (D.S.C. 2001) (citing *Crary v. Djebelli*, 496 S.E.2d 21, 23 (1998)).

benefit of the public, and intended to rely on public funding to operate in the Property, the transaction *ipso facto* affects the public interest.

Having itself asserted the interests of the citizens of Charleston County as a reason to justify its Conduct, the County cannot now expect the Court to ignore the possibility that the Conduct might negatively impact those citizens. *See Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994) ("Each case must still be analyzed to determine whether the wrongful conduct impacts upon the public, whether through the circumstances of the transaction or through evidence of other similar acts.").

Furthermore, it appears from the record that this is not the only lease in which the County is a party. Specifically, when questioned regarding the County's leases with other entities, Mr. Smalls testified:

> Q.    There are plenty of projects that are much larger than the Chicora Life Center in terms of the financial exposure to the county, correct?
>
> A.    Yes. . . .
>
> Q.    So you would agree that there are plenty of projects -
>
> A.    Yes. From the county, yes, I agree with that.
>
> Q.    Larger, longer delays, more money involved?
>
> A.    Yes.

Rule 30(b)(6) Deposition of Smalls. Therefore, the Court finds that the conduct is likely to be repeated. For the reasons stated, the Court finds that the County's conduct affects the public interest.

### 3. *Conduct of trade and commerce*

The final component of an unfair trade practices claim is the requirement that the acts complained of involve trade or commerce. *See Health Promotion Specialists,* 743 S.E.2d at 816 ("[B]y its very definition, "trade" or commerce" involves "[e]very business occupation carried on

18

for subsistence or profit and involving the elements of bargain and sale, barter, exchange, or traffic.") (citing Black's Law Dictionary (9th ed. 2009)).  This is because the purpose of the Act is to prevent anticompetitive, unfair, and deceptive behavior in the market <u>in connection with the exercise of trade or commerce</u>.  *See Camp v. Springs Mortg. Corp.*, 426 S.E.2d 304, 306 (S.C. 1993) (a claim may be brought under the Act for "unfair methods of competition and unfair or deceptive acts or practices" in the conduct of trade or commerce).  This factor requires evidence that the actions complained of were taken "in the conduct of trade or commerce," which is defined as involving "the advertising, offering for sale, sale or distribution [] any services and property . . . and any other . . . thing of value."  S.C. Code Ann. § 39-5-10(b); *see Moore v. Williamsburg Regional Hosp.*, 560 F.3d 166 (4th Cir. 2009); *Foggie v. CSX Transp., Inc.*, 431 S.E.2d 587 (S.C. 1993).

The County argues that it is entitled to summary judgment on Chicora's unfair trade practices claim because Chicora's claims against the County do not involve trade or commerce.  Instead, the County maintains that this is merely a "private feud" between two parties over a contract, and that Chicora's claims are outside the scope of the Act.  The County also argues that the subject transaction does not meet the statutory definition of "trade or "commerce," because Chicora, not the County, is the entity providing a service or property.

Chicora disputes the County's contention that the transaction is not covered by the Act, and asserts that the terms "trade" and "commerce" must be broadly construed.  Citing *Burbach v. Investors Management Corporation International*, 484 S.E.2d 119, 121 (S.C. Ct. App. 1997), for the proposition that "[l]eases, while created by contract, . . .clearly are a "thing of value," even

under the strictest reading of the statute's plain language," Chicora argues that because it involves a thing of value, this transaction must be covered by the Act.[16]

Construing the facts in a light most favorable to Chicora, there is no evidence in the record that, in the Lease transaction, the County engaged in the advertising, offering for sale, sale or distribution of any services, property, or thing of value.  In addition, there is no evidence that the Conduct (which forms the basis of Chicora's unfair trade practices claim) was directed at the marketplace.  It appears that the dispute between Chicora and the County is in the nature of a contract dispute between two sophisticated entities.  Therefore, the Court finds that the County's Conduct is not the "conduct of trade or commerce," within the meaning of the Act.  Because Chicora has failed to meet a necessary factor, the County is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, the Court grants so much of the County's Motion as seeks summary judgment on Chicora's causes of action for intentional interference with existing and prospective contractual relations, and unfair trade practices, and denies the so much of the County's Motion as seeks summary judgment on the remainder of Chicora's claims.  The Court also denies the County's Motion for summary judgment on its claim for breach of contract.

---

[16] While *Burbach* does recognize that a lease transaction can, in certain circumstances, implicate trade or commerce, *Burbach* does not, as Chicora implies, stand for the proposition that every lease transaction will give rise to a claim under the Act.  *Compare Columbia East Assoc., v. Bi-Lo, Inc.*, 386 S.E.2d 259, 263 (S.C. Ct. App. 1989) (affirming the trial court's directed verdict in favor of the defaulting tenant, the Court of Appeals recognized that the deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the Act, which is not available to address a private wrong).

Chicora's request for summary judgment is denied.  While the Court has determined that a breach has occurred, there remain material issues of fact that preclude the entry of summary judgment in favor of Chicora on that claim.

**AND IT IS SO ORDERED.**