# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **16-02447-jw**
Adversary Proceeding Number: **16-80046-jw**

**ORDER DENYING CHARLESTON COUNTY'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S REQUEST FOR SUMMARY JUDGMENT**

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/26/2017**



*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 07/26/2017

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Chicora Life Center, LC,<br><br>　　　　　　　　　　　Debtor.<br><br>Chicora Life Center, LC,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Charleston County,<br><br>　　　　　　　　　　　Defendant. | C/A No. 16-02447-JW<br><br>Adv. Pro. No. 16-80046-JW<br><br>Chapter 11 |

**ORDER DENYING CHARLESTON COUNTY'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S REQUEST FOR SUMMARY JUDGMENT**

This matter comes before the Court pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024, on the motion ("Motion") of defendant Charleston County, a political subdivision of South Carolina ("County"), for relief from this Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, and Denying Defendant's Request for Summary Judgment entered on June 5, 2017 ("First Summary Judgment Order").[1]  Plaintiff Chicora Life Center, LC ("Chicora"), filed a timely objection to the Motion ("Objection").

Having considered the parties' arguments, the record in this Adversary Proceeding and the Main Bankruptcy Case, as well as the applicable legal authorities, the Court denies the County's Motion, making the following findings:

---

[1] Terms defined in the First Summary Judgment Order shall have the same meaning in this Order.

# FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

**I.    Legal Standard**

A "motion to reconsider" is not recognized by either the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure;[3] therefore, the Motion should be treated as a motion to alter or amend a judgment pursuant to Rule 59(e).[4]  *McCall v. Williams*, 59 F. Supp. 2d 556, 558 (D.S.C. 1999).

Altering or amending a judgment pursuant to Rule 59(e) is appropriate: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.[5]  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *King's Grant Golf Acquisition, LLC v. Abercrombie* (*In re T2 Green*), 364 B.R. 592, 606 (Bankr. D.S.C. 2007).  Whether to grant a Rule 59(e) motion is within the Court's discretion.  *Robinson v. Wix Filtration*, 599 F.3d 403, 410 (4th Cir. 2010).  "Reconsideration of judgment after its entry is an extraordinary remedy which should be used sparingly."  *In re T2 Green*, 364 B.R. at 606; *accord McCall v. Williams*, 59 F. Supp. 2d at 558.  A Rule 59(e) motion cannot be used to relitigate issues, "or to raise arguments or present evidence

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

[3] Hereinafter "Rule" and "Bankruptcy Rule," respectively.

[4] Because the County filed the Motion within fourteen (14) days after entry of the First Summary Judgment Order, the Motion should be analyzed only under Rule 59(e), and not Rule 60.  *See Robinson v. Wix Filtration*, 599 F.3d 403, 412 (4th Cir. 2010).

[5] What constitutes "clear error" is not specifically defined.  Generally, the term "should conform to a very exacting standard and the court should have a clear conviction of error before finding that a final judgment was predicated on clear error."  *King's Grant Golf Acquisition, LLC v. Abercrombie* (*In re T 2 Green*), 364 B.R. 592, 606 (Bankr. D.S.C. 2007) (internal citations omitted).  Furthermore:

> [w]hile the "manifest injustice" standard is even more vague than "clear error," it can be said that "manifest injustice does not exist [when] a party could easily have avoided the outcome, but instead elected not to act until after a final order had been entered."

*Id.* at 606 (*citing Lightfoot v. District of* Columbia, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)).

2

that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (internal citation omitted); *see generally* 11 Charles Alan Wright, Arthur R. Miller, *et al., Federal Practice and Procedure* § 2810.1 (3d ed. 2017). A party's disagreement with the Court's ruling will not support relief pursuant to Rule 59(e). *Hutchinson v. Staton,* 994 F.2d 1076, 1082 (4th Cir. 1993); *McCall v. Williams*, 59 F. Supp. 2d at 558 ("Mere disagreement with how the law is applied does not support a Rule 59(e) motion.").

## II.    Relief Requested by the County

The County advances several issues with the First Summary Judgment Order that, in its view, justify altering or amending the Order. The Court will address each in turn.

### A. Final Authority

The County believes the Court erred in finding that it had the authority to enter final orders in the Adversary Proceeding.[6]

As recognized in the First Summary Judgment Order, in its pleadings filed early in this Adversary Proceeding and in the Main Bankruptcy Case, the County was aware of the issues related to final authority, and initially purported to withhold its consent to the Court's final authority in this Adversary Proceeding and over the Main Bankruptcy Case. *See* First Summary Judgment Order at ¶ 39. Thereafter, instead of filing an objection to final authority and seeking a

---

[6] To the extent that the Motion purports to challenge the Court's final authority in the Main Bankruptcy Case, the County's arguments fail. Confirmation of the Second Plan and approval of Chicora's assumption of the Lease are undisputedly core proceedings arising under the federal statutory scheme of Title 11, and over which this Court has statutory and constitutional final authority, with or without a party's consent. *See* 28 U.S.C. § 157(b)(1); *Stern v. Marshall*, 564 U.S. 462, 473 and 493-94 (2011) (Pursuant to § 157(b)(1), bankruptcy judges may statutorily "hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11,'" and constitutionally hear and enter final judgments on claimed rights to relief that flow from a federal statutory scheme.); *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 302 n.2 (4th Cir. 2017) ("In *Stern* and related cases, the Supreme Court has repeatedly distinguished between state common law claims that do not flow from a federal statutory scheme and the core of the federal bankruptcy power—restructuring debtor-creditor relations by assessing 'creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'").

3

determination of the issue on the merits, as required by the Scheduling Order,[7] or bringing the issue before the Court for an early determination,[8] the County chose instead to voluntarily appear before the undersigned and to request relief in its favor. *See Wellness Int'l Network, Ltd. v. Shariff*, 135 S. Ct. 1932, 1940 (2015) (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003) ("'[T]he key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator.").

The County was well aware (or certainly should have been aware) of the deadlines contained in the Scheduling Order. The County failed to comply with the Scheduling Order's requirements, and its subsequent request for summary judgment in its favor in this Adversary Proceeding indicated an affirmative decision on the part of the County to accept the Court's final authority. In addition, the County never indicated a challenge to final authority by filing a motion for withdrawal of the reference, nor did it seek a dismissal of the Adversary Proceeding even after the District Court's denial of the County's request for an interlocutory appeal of the Court's Order Denying the County's Motion for Discretionary Abstention.

The Motion cites no intervening change in the controlling law or new evidence, nor does it point to a clear error of law or manifest injustice that might provide a basis to change the Court's

---

[7] As is the Court's customary practice, it set a bold deadline in the Scheduling Order for the parties to raise, by motion, any issues regarding core v. non-core jurisdiction, or final authority. *See* First Summary Judgment Order, at ¶ 39 and Section I, p. 25. This procedure allows the Court to formally determine these issues at an early enough stage of the proceeding to aid in the course of the litigation. A determination of lack of final authority or core jurisdiction may allow consideration of the withdrawal of the reference or other action to save this Court's time and resources, and save the parties' costs.

[8] The Court disagrees that by questioning final authority "in the context of its Abstention Motion," the County sought a determination on the merits of this issue. While the Abstention Motion was filed before the objection deadline set forth in the Scheduling Order, it appears unrelated to it. At no time did the County ask the Court to treat the Abstention Motion as both a request for discretionary abstention and as a motion seeking a determination on the issue of final authority.

4

conclusion that the County both impliedly and expressly consented to the entry of final orders by this Court.

### B. Time for Performance

The County asserts that the Court failed to decide whether "Chicora performed the Lease by satisfying the Effective Date within a reasonable time," and believes that a ruling on this issue was a prerequisite to the Court's decision on the effectiveness of the Termination Letter.

It is clear from its Counterclaim and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Summary Judgment for Defendant ("County's First Motion") that the County asked the Court to find that Chicora's failure to satisfy the preconditions to the Effective Date on or before the November 1 Deadline was a breach of the Lease. It was only after the Court noted the lack of deadline for the Effective Date that the County shifted to the "reasonable time" standard in this Motion. The County cannot assert new arguments or recharacterize its prior arguments at this stage. However, the Court notes that the County's waiver of prior defaults and breaches would encompass the assertion that Chicora took too long in meeting the preconditions to the Effective Date.

### C. Effectiveness of the Termination Letter

The County believes that the Court erred in holding the Termination Letter was ineffective. Although it concedes that it was obligated to provide Chicora with reasonable notice of its intent to terminate,[9] the County believes that, having given three prior notices of default, the County had the right to immediately terminate the Lease when it saw fit, without giving Chicora any additional notice or time to cure.

---

[9] *See* County's First Motion at 44, n.34.

5

The County's primary justification for the Attempted Termination was Chicora's failure to have the Leased Premises ready for occupancy. It is undisputed that the parties voluntarily removed the Original Day-Certain Deadline, and never agreed to fix a new deadline. The evidence showed a series of exchanges regarding the readiness of the Leased Premises from May 2015 to the Attempted Termination on March 9, 2016. During this time period, the County gave Chicora three (3) notices: the May 8 Letter, the June 24 Letter, and the August 26 Letter. In the two earlier letters, the County threatened to hold Chicora in default if it failed to comply with the mandates contained in the letters,[10] but only the August 26 Letter advised Chicora that if it failed to satisfy the preconditions of the Effective Date by the November 1 Deadline, the County would terminate the Lease.

Although the County argues that neither the August 26 Letter or the Lease provide for immediate automatic termination following this type of notice, this argument fails to give effect to all provisions of each of these documents. This contention also ignores the plain language contained in the August 26 Letter and Article 20 of the Lease.[11]

---

[10] It appears that Chicora failed to meet the deadlines imposed by the County in the May 8 Letter and June 24 Letter. The County did not then terminate or attempt to terminate the Lease, but instead gave Chicora additional time to perform. *See, e.g.,* June 24 Letter ("The County will continue to work with Chicora to determine how to resolve the Tenant Improvement overruns and it fully intends to comply with the Lease . . . .").

[11] Article 20(b) of the Lease states:

> In the Event of Landlord's Default, Tenant may terminate this Lease at any time after such notice has been given to Landlord in writing, and on the date specified in such notice (which shall be not less than thirty (30) days after the giving of such notice), and provided Landlord shall have failed to cure such default. <u>This Lease shall terminate, unless on or before such date all items causing Default under this Lease and all costs and expenses incurred by or on behalf of Tenant hereunder shall have been remedied to the satisfaction of Tenant</u> and/or paid by Landlord <u>and all other breaches of this Lease by Landlord at the time existing shall have been fully remedied to the satisfaction of Tenant</u>.

(Emphasis added). Likewise, the August 26 Letter informed Chicora that if it failed to cure its defaults by the November 1 Deadline, the County would "consider Chicora in breach of the Lease, and therefore, <u>terminate the Lease</u>." (Emphasis added).

6

The County now concedes that it did not enforce the November 1 Deadline and termination, but "gave Chicora five more months." However, there is nothing in the record to support the County's claim that, in so doing, it had agreed with Chicora to extend the termination to a later, unspecified date.[12] In contrast, there is an abundance of evidence in the record, including the parties' course of dealing, to support the Court's finding that the legal consequence of the County's decision not to enforce the termination amounted to a waiver of Chicora's earlier defaults.[13] *See* 5 Philip L. Bruner and Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 18:18 (2002 & Supp. 2016) ("Materiality of a breach due to untimely performance is waived if the nonbreaching party chooses not to terminate the contract after a milestone or completion date has passed, without having set new dates within a reasonable time thereafter.").

### D. Waiver of Chicora's Defaults and Breaches

Pointing to Article 34 of the Lease, the County argues that the First Summary Judgment Order erroneously finds that the County waived Chicora's "continuing and anticipatory defaults." This is a specious reading of the Order and the Court's ruling.

The First Summary Judgment Order does not find that the County waived preconditions to the Effective Date. Nor does it hold that the County excused Chicora from performing. The evidence is clear that the County was insisting on Chicora meeting the preconditions to the Effective Date, giving the County possession of the Leased Premises, and performing under the

---

[12] The January 30, 2016 email of Doug Durbano ("Durbano Email"), attached as Exhibit 9 to the County's Summary Judgment Motion filed on April 20, 2017 ("County's Second Motion"), does not alter this conclusion. The Durbano Email does not establish either that the parties agreed upon a new Day Certain Deadline, or that the County moved the November 1 Deadline to another day certain. Furthermore, the Termination Letter, pursuant to which the County purports to have terminated the Lease (effective immediately), references neither Chicora's failure to meet the "deadline" discussed in the Durbano Email, or the November 1 Deadline that the County claims it extended.

[13] The County's breach of contract claim is expressly predicated on Chicora's failure to meet the November 1 Deadline.

Lease. Neither does the First Summary Judgment Order hold that the County waived the right to raise and enforce future defaults or breaches; indeed, as stated in the First Summary Judgment Order, Article 34 expressly preserves for the County the ability to waive a present default, without jeopardizing its right to enforce a future default.

The First Summary Judgment Order's finding of waiver deals with the County's repeated waiver of enforcement of the performance deadlines it imposed in the May 8, June 24, and August 26 Letters, and its wavier of the November 1 Deadline and termination. By its own admissions, the County gave Chicora formal deadlines for performance and after the passage of the deadlines, the County failed to enforce its demands.[14] The County admits it "acted too graciously," yet resists acknowledging the consequences of its actions, or the fact that Chicora incurred costs and expenses in continuing its performance. Having imposed performance deadlines and then choosing not to enforce the very same deadlines, the County cannot now complain about the timeliness of Chicora's performance.

Likewise, the County's decision to excuse the performance deadlines necessarily precludes the County from now penalizing Chicora for missing them. Put another way, the County cannot claim that Chicora took too long to perform, when the repeated delays in performance were sanctioned and facilitated by the County's repeated decision to encourage Chicora's continued performance.

In addition, despite its full knowledge of the alleged deficiencies in Chicora's performance, and actual notice and knowledge of the terms of the Second Plan, the County chose to stand mute during the confirmation process in which Chicora proposed to assume the Lease and continue its

---

[14] For example, in the June 24 Letter, the County demanded that Chicora provide it with adequate assurance that Chicora would have sufficient funds to complete the Tenant Improvements. There is no evidence in the record that Chicora provided this information, or even responded to the County's demand, and there is no indication in the record that the County did anything other than abandon this demand.

8

performance thereunder. Chicora, as the Debtor in Possession, confirmed the Second Plan wherein it assumed the Lease with no objection, comment, or input from the County. Any prepetition defaults or breaches that the County could have pursued through the confirmation process were not preserved. Consequently, as a matter of law and by virtue of the Confirmed Plan, the County is barred from asserting alleged pre-confirmation defaults and breaches. Chicora, as the Debtor-in-Possession, has the right to perform under the assumed Lease.

### E. Impact of Confirmed Plan

The County believes that the Court's finding that confirmation of the Second Plan had consequences in the Adversary Proceeding is incorrect. The County claims that it was deprived due process,[15] and that the Confirmed Plan was defective and failed to preserve its rights under § 365(b). In the same argument, the County claims that the Confirmed Plan preserves its claims in the Adversary Proceeding.

The Court rejects the County's claim that the Second Plan does not give the County notice of Chicora's "specific intent to assume the Lease." The Court also rejects the County's assertion that Chicora was required to include in the Second Plan all of the legal consequences that would flow from confirmation. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). As discussed at length in the Court's Order Denying the County's Motion for Reconsideration of the Order in Aid, entered herewith, the Confirmed Plan gave the County ample notice: Class 11

---

[15] The County does not argue that it did not have notice of the provisions of the Confirmed Plan, but asserts that the Second Plan should have contained more details.

9

clearly addresses the proposed treatment of County's Counterclaims, and Article VII expressly sets forth Chicora's intention to assume the Lease. Implicit in Chicora's assumption of the Lease is the County's obligation to resume and continue its performance thereunder as well, including those steps necessary to Chicora's performance. The Confirmed Plan also discusses Chicora's continued pursuit of its monetary claims against the County in the Adversary Proceeding.

Chicora's overt declaration of its intent to assume the Lease, to resume its performance thereunder, and to vigorously pursue enforcement of the County's obligations under the Lease and its prepetition claims against the County, are not inconsistent or mutually exclusive, and could not be more clear. To read this unequivocal language as also preserving the County's right to pursue its competing claims that were in direct conflict with Chicora's reorganization efforts is nonsensical. The language of the Confirmed Plan does not preserve the County's prepetition claims against Chicora; by its terms, the Second Plan necessarily put the County on notice that Chicora had no intention of preserving those claims for the benefit of the County.

Pursuant to § 1141(a), "the provisions of a confirmed plan bind the debtor . . . and any creditor, . . . whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." The County undisputedly had notice of the pendency of the Main Bankruptcy Case, the provisions of the Second Plan, and the opportunity to present its plan objections, to seek adequate assurance of future performance, and to cast a ballot. If the County believed that the Second Plan was defective in any respect, or lacked any essential information, the burden was on the County to protect itself by making its objections known to the Court, Chicora, and other parties in the Main Bankruptcy Case. *See State of Md. v. Antonelli Creditor's Liquidating Tr.*, 123 F.3d 777, 782 (4th Cir. 1992) (creditors with "knowledge, choice,

10

and opportunity" to object to confirmation of a chapter 11 plan who failed to do so are barred from making a collateral attack on the provisions of the plan with which they do not agree).

The County cannot now, under the guise of the Motion, seek to collaterally challenge the Confirmed Plan, or blame this Court or the debtor for its failure to take steps to protect its rights.

### F.  Specific Performance

Chicora's assumption of the Lease placed both parties in a position to resume their performance thereunder, making a ruling on the issue of specific performance superfluous. However, the County asks the Court to modify the First Summary Judgment Order and find that Chicora failed to present evidence to satisfy its burden that it is entitled to specific performance.

The Court declines to honor this request, as it does not raise evidence of an intervening change in controlling law, claim the existence of new evidence not previously available, or describe a clear error of law or evidence of manifest injustice.[16]

### CONCLUSION

Each party asked the Court to issue a final judgment in their favor on the issue of the effectiveness of the County's Attempted Termination and Chicora's alleged breach. The First Summary Judgment Order thoroughly considers the necessary facts and law as presented by both parties. The Motion merely asserts arguments the County should have raised at the summary judgment stages either in support if its own request for summary judgment, or in opposition to Chicora's First Request for Summary Judgment. Therefore, the Motion does not meet the high burden required to justify relief under Rule 59(e).[17]

---

[16] The Court also notes that, having found in the Second Summary Judgment Order that the County's Attempted Termination was a prepetition breach of the Lease, specific performance may be a remedy available to Chicora.

[17] To the extent that this Order fails to specifically address any argument or issue raised in the Motion, the Court notes that it has nonetheless considered such arguments and issues, and finds that they do not have merit and are denied.

11

For the foregoing reasons, the Court finds that the County failed to provide grounds to support the relief requested in the Motion, and the Motion is denied.

**AND IT IS SO ORDERED.**